IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DARO WEILBURG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3222 |
| | ) | |
| SUSAN SUGGS, Records Office | ) | |
| Supervisor in her individual capacity, | ) | |
| GREGORY SIMS, Warden, in his | ) | |
| individual capacity, | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, an administrative | ) | |
| agency, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on a Motion to Dismiss (d/e 9) filed by Defendants Susan Suggs, Gregory Sims, and the Illinois Department of Corrections.  The individual Defendants are sued in their individual capacity.  Plaintiff Daro Weilburg filed the pending pro se Complaint (d/e 1) under 42 U.S.C. § 1983 against prison officials and the Illinois Department of Corrections (IDOC), seeking injunctive relief, as well as compensatory and punitive damages, court costs, and attorney fees.

1

Weilburg alleges in Count I that the Defendants acted with deliberate indifference when they detained him beyond his release date due to their failure to properly credit him for the time he spent in custody prior to sentencing in Winnebago County, Illinois, Case No. 00-CF-3174. In Count II, Weilburg alleges that the Defendants acted with deliberate indifference when they held him in custody beyond his mandatory supervised release date of August 6, 2004, by miscalculating his custody and release dates. Weilburg alleges in Count III that the Defendants defamed him when they improperly characterized his theft offense (in Winnebago County, Illinois, Case No. 94-CF-2420) on the IDOC website. For the reasons set forth below, the Motion to Dismiss is allowed.

As an initial matter, the Court notes that Weilburg has attached copies of the following three documents to his Complaint: (1) a copy of an Order issued by the Circuit Court for the 17th Judicial Circuit in Winnebago County, Illinois, Case No. 94-CF-2420; (2) a copy of the Judgment entered, on August 6, 2004, in Case No. 00-CF-3174; and (3) a copy of a statement by the state's attorney describing the theft offense in Case No. 94-CF-2420. See Attachments to Complaint. The Defendants have not asked the Court to strike the documents: "A copy of any written instrument which is an

exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). The Court therefore will consider the information set forth in the documents to analyze the instant Motion.

## BACKGROUND

The allegations relating to Count I as set forth in the Complaint are as follows. Weilburg is a former inmate who was incarcerated at the Taylorville Correctional Center. He was sentenced to a 7-year term of imprisonment for theft in Case No. 94-CF-2420, and a 30-month term of imprisonment for a bail bond violation in Case No. 00-CF-3174, to be served consecutively. The aggregate sentence for the two offenses is nine and one-half years imprisonment. The Judgment entered in Case No. 00-CF- 3174 indicated that Weilburg was entitled to receive a credit of 382 days for time served in custody prior to sentencing.

On June 13, 2006, the Circuit Court of Winnebago County, Illinois, issued an order amending Weilburg's credit for time served prior to sentencing in Case No. 94-CF-2420. Weilburg was originally given a credit of 398 days for the time he spent in custody prior to his sentencing; the Circuit Court credited Weilburg with an additional 57 days, for a total credit of 455 days in Case No. 94-CF-2420.

The Complaint alleges that the Defendants failed to properly credit Weilburg for the time he was held in custody prior to his sentencing in Case No. 00-CF-3174. Weilburg alleges that, although the Defendants have credited him for the 455 days he was held in custody prior to sentencing in Case No. 94-CF-2420, they have failed to credit him for the 382 days he was held in custody prior to sentencing in 00-CF-3174. The Complaint alleges that the Defendants "did award [Weilburg] (310) days for what the Defendants label 'in continuous custody.'" Complaint, V ¶ 5.

The Complaint alleges that: "The Plaintiff moved to Arizona in May of 2000, he was arrested by the Arizona authorities on July 21, 2003, held in the Yauapai County Jail, the Mesa City Jail, the Maricopa County Jail, and the Federal Transfer Center in Oklahoma before returning to Rockford, IL. on October 1, 2003. The sentencing court took these dates into consideration when awarding Plaintiff (382) days credit for time served prior to sentencing in 00-CF-3174 on August 6, 2004." Complaint, V ¶ 6.

The Complaint asserts that, on June 3, 2006, Weilburg filed an "inmate request" complaining about the alleged calculation error. According to the Complaint, he filed a grievance against the Defendants on June 8, 2006, and another inmate request complaining about the calculation error

4

on June 14, 2006. The Complaint alleges that, on June 28, 2006, Weilburg filed a petition for a writ of mandamus in state court, as well as a memorandum in support of the petition, basically claiming that the Defendants had failed to credit him for the 382 days he was held in custody prior to sentencing in Case No. 00-CF-3174. The Complaint asserts that Weilburg filed a motion for summary judgment. The Complaint states that on July 25, 2006, the Defendants moved to strike the premature summary judgment motion and to dismiss the petition for a writ of mandamus. The Complaint states that, on July 27, 2006, Weilburg filed a response to the motion to dismiss. According to the Complaint, Weilburg filed a second motion for summary judgment on August 13, 2006. The Complaint states that the Defendants have not yet filed a response to the second motion for summary judgment.

The Complaint states that the Defendants' contention that Weilburg was "'in continuous custody' simultaneously on each case from October 1, 2003 until August 6, 2004, (310 days)" is wrong. <u>Complaint</u>, V ¶13. The Complaint further alleges: "Plaintiff [was not] in the custody of the Department of Corrections, he was held within the County of Yauapai, the City of Mesa and the County of Maricopa in the State of Arizona, he was

5

also in the custody of the U.S. Marshalls [sic] at the F.T.C. in Oklahoma and the Winnebago County Jail in Illinois from July 21, 2003 until sentencing in 00-CF-3174 on August 6, 2004, (382 days) not (310 days) as the Defendants claim." Id. According to the Complaint, the Defendants were fully aware on July 17, 2006, that they had miscalculated Weilburg's "'in continuous custody date'". Id. at ¶ 15. The Complaint alleges that the Defendants failed to comply with the mittimus issued in Case No. 00-CF-3174, thereby causing Weilburg to remain incarcerated beyond his actual release date. Id. at ¶ 16.

The allegations relating to Count II as set forth in the Complaint are as follows:

> 17. The Illinois Legislature promised plaintiff by statute that if he complied with the conditions placed upon him by the Department of Corrections that he would receive day for day good conduct credit. The Legislature also provided an additional 180 days of meritorious good time credits. Plaintiff's (7) year sentence and (2½) year sentence imposed consecutively, became aggregated by the IDOC into a single sentence of (9½) years.
>
> 18. The (9½) year sentence would be statutorily complete after service of (4) years (3) months. Plaintiff was awarded (455 days) on the (7) year sentence for time served prior to sentencing on November 19, 1999, (as amended on June 13, 2006) in 94-CF-2420 and (382 days) on the (2½) year sentence imposed on August 6, 2004 in 00-CF-3174. The

6

> IDOC computes months into (30 day) increments. Thus, 455 + 382 = 837 ÷ 30 = 2 yrs. 3 mths. 27 days.
>
> 19.  4 yrs. 3 mths – 2 yrs. 3 mths. 27 days = 1 yr. 11 mths. 3 days. From August 6, 2004, the date of sentencing in 00-CF-3174. Plaintiff had 1 yr. 11 mths. and 3 days left to serve the statutorily required sentence.

Complaint, V ¶¶ 17-19.

Weilburg alleges that he should have been released on August 6, 2004, to begin serving his two-year term of mandatory supervised release, as required under Illinois law. He alleges that the Defendants acted in wanton disregard when they held him in custody for more than two years beyond his release date of August 6, 2004.

The allegations relating to Count III as set forth in the Complaint are as follows. The Complaint alleges that, in listing Weilburg's theft conviction on the IDOC website, the Defendants inaccurately noted that Weilburg was convicted of theft from a school or place of worship. The Complaint alleges that the Defendants were aware that Weilburg was a minister of the Jehovah's Witnesses and wanted to discredit him among his "fellow believers" by mischaracterizing the theft offense on the IDOC website. Complaint, V ¶ 23.

7

ANALYSIS

The Defendants move to dismiss Counts I and II of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Defendants move to dismiss Count III of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. A Rule 12(b)(6) motion to dismiss for failure to state a claim requires the court to consider the allegations in the light most favorable to the plaintiff and to accept all well-pleaded factual allegations contained in the complaint as true. Cole v. U.S. Capital, Inc., 389 F.3d 719, 724 (7th Cir. 2004). In reading a pro se plaintiff's complaint, the court must construe the allegations liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction. In analyzing such a motion, the court must accept all well-pleaded facts as true and draw all reasonable inferences from those allegations in favor of the plaintiff. Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999). Plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. United Phosphorus,

Ltd. v. Angus Chemical Co., 322 F.3d 942, 946 (7th Cir. 2003).

I.      Claims against the Illinois Department of Corrections

The Defendants first move to dismiss all claims against IDOC because it is not a suable entity.  The Court agrees.  IDOC is not subject to suit in § 1983 actions.  The Supreme Court has stated that a state and its agencies are not "persons" under § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989); Ryan v. IL Dept. of Children and Family Services, 185 F.3d 751, 758 (7th Cir. 1999).  Therefore, all claims against IDOC are dismissed with prejudice.

II.     Claims against Suggs and Sims

  A.    Count I

The Defendants argue that Count I should be dismissed because Weilburg was properly credited for all the time he was held in custody prior to sentencing in Case No. 00-CF-3174.  The Defendants rely on People v. Latona in support of their contention.  Latona, 184 Ill.2d 260 (1998).  In Latona, the Illinois Supreme Court interpreted § 5-8-4(e)(4) of the Unified Code of Corrections, which "governs the calculation of consecutive sentences and impacts upon the application of sentence credit."  Id. at 270;

9

730 ILCS 5/5-8-4(e)(4).[1] In construing the statute, the Illinois Supreme Court stated that "[a]llowing offenders sentenced to consecutive sentences a double credit for each day of actual custody would frustrate the legislature's clearly expressed intent" in enacting § 5-8-4(e)(4). Latona, 184 Ill.2d at 271. The Court therefore determined that an individual subject to consecutive sentences should be given credit only once for the time he or she was in simultaneous custody, as well as any "*additional*, nonsimultaneous time in presentence custody on one offense or the other. . . ." Id. The Complaint alleges that Weilburg was given credit for the 455 days he was held in custody prior to sentencing in Case No. 94-CF-2420. Weilburg alleges that the Defendants have, however, failed to credit him for the 382 days against the 30-month sentence imposed in Case No. 00-CF-3174. The Complaint asserts that Weilburg was not "'in continuous custody'

---

[1]Section 5-8-4(e)(4) reads:
(e) In determining the manner in which consecutive sentences of imprisonment, one or more of which is for a felony, will be served, the Department of Corrections shall treat the offender as though he had been committed for a single term with the following incidents:

\* \* \* \*

(4) the offender shall be awarded credit against the aggregate maximum term and the aggregate minimum term of imprisonment for all time served in an institution since the commission of the offense or offenses and as a consequence thereof at the rate specified in Section 3-6-3 of this Code.
730 ILCS 5/5-8-4(e)(4).

simultaneously on each case from October 1, 2003 until August 6, 2004[.]" Complaint, V ¶ 13. In viewing the allegations of the Complaint in the light most favorable to Weilburg at this stage, the Court finds that the Defendants' contention that Weilburg was properly credited for all the time served prior to sentencing in Case No. 00-CF-3174 is not clearly established. The Complaint alleges that Weilburg was not in simultaneous custody for the two offenses. This allegation is sufficient to support a finding that Weilburg is entitled to credit for any additional, nonsimultaneous time spent in custody against the aggregate sentence.

Count I, however, fails to state a claim under section 1983. To state a claim under § 1983, Weilburg must first show that: (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person or persons acting under color of state law. 42 U.S.C. § 1983. The allegations of the Complaint show that the Defendants acted under color of state law when they failed to properly credit Weilburg for the time he spent in custody prior to sentencing in Case No. 00-CF-3174. Weilburg, however, fails to identify the federal rights under which his claims arise. This failure does not warrant a dismissal as long as the allegations in the Complaint amount to violations that are viable

11

under any particular federal right. See Antonelli v. Sheahan, 81 F.3d 1422, 1433 n. 8 (7th Cir. 1996). The issue therefore is whether the allegations of the Complaint establish that Weilburg was deprived of a right secured by the Constitution or laws of the United States.

To address the issue, the Court turns to Toney-El v. Franzen, a case factually similar to the instant case. Franzen, 777 F.2d 1224 (7th Cir. 1985). In Franzen, the plaintiff, a prisoner, brought a § 1983 action against prison officials, alleging that the defendants held him in prison beyond his release date by miscalculating his release date in violation of his constitutional rights. The Franzen Court noted that the plaintiff "had a constitutionally protected liberty interest in being released from prison before the end of his term for good behavior." Franzen, 777 F.2d at 1226 (citing McKinney v. George, 726 F.2d 1183, 1189 (7th Cir. 1984)). The Seventh Circuit determined that the plaintiff's allegations implicated procedural due process rights.

The Franzen Court noted that there were two ways in which the plaintiff could challenge the alleged miscalculation of his custody and release dates under the Due Process Clause of the Fourteenth Amendment: The plaintiff could file a § 1983 action either challenging the mistakes made by

state employees in calculating his custody and release dates or challenging the state procedures by which those mistakes were made. Franzen, 777 F.2d at 1227-28. The Seventh Circuit determined that under either scenario the plaintiff failed to allege a violation of the Due Process Clause.

The Seventh Circuit reasoned that, to the extent that the plaintiff was challenging the mistakes made by the defendants, he failed to allege a denial of due process rights. Id. at 1228 (citing Parratt v. Taylor, 451 U.S. 527, 540 (1981)). The Franzen Court stated that there were various remedies available to the plaintiff that he could have utilized: the plaintiff could have written a letter notifying the defendants of the alleged error, filed a petition in the state court for a writ of mandamus to correct the alleged error, or filed a complaint in the state courts for false imprisonment.[2] Id. The Seventh Circuit then explained: "Because Illinois law and the informal procedures of the Department of Corrections provided [the plaintiff] with remedies that were both adequate and available, [he] has failed to allege a violation of the Due Process Clause of the fourteenth amendment." Id. (citing Parratt, 451 U.S. at 543-44).

---

[2]The Seventh Circuit noted that the first two remedies were available to the plaintiff prior to the deprivation of his liberty interest.

13

The Seventh Circuit noted that, to the extent that the plaintiff was challenging the state procedures underlying the calculation error, he similarly failed to state a claim because "the Illinois Department of Corrections' method of reviewing challenges to the calculation of custody or release dates satisfies the dictates of procedural due process." Id. at 1229. In reaching this conclusion, the Seventh Circuit first determined "whether the procedures surrounding the opportunity to be heard afforded to inmates who contest the calculation of their release dates is sufficient to meet the requirements of the due process clause." Id. at 1228. The Franzen Court stated that a "full blown adversarial hearing" was not always necessary to satisfy the dictates of procedural due process. Id. at 1229. The Seventh Circuit noted that the erroneous calculation of the plaintiff's release date implicated plaintiff's liberty interest, but that "the risk of erroneous deprivation through the procedures used seem[ed] negligible." Id. at 1228. The Seventh Circuit explained that in Illinois a judge first determined, at a judicial proceeding, what amount of credit a prisoner was entitled, which "presumptively satisfie[d] the due process clause", and thereafter the Department of Corrections made " two purely mathematical calculations" to determine the prisoner's custody and release dates. Id. at 1229.

The Seventh Circuit stated that the prisoner could challenge the calculations through correspondence, and this informal procedure provided the prisoner with the adequate opportunity to be heard as required under the Due Process Clause. The Court therefore found that a full blown administrative hearing with witnesses and evidence was not necessary because it "would entail substantial administrative and fiscal burdens through the expenditure of time and the use of personnel to evaluate a mathematical calculation and would provide little additional protection to an inmate than the present procedure provides." Id.

Applying the analytical framework developed in Franzen, the Court in this case finds that the allegations of the Complaint fail to state a § 1983 claim for a violation of the Due Process Clause. To the extent Weilburg is challenging the alleged mistakes made by the Defendants, he fails to state a claim because the remedies provided under Illinois law and the informal procedures of the IDOC were both adequate and available. The Complaint indeed asserts that Weilburg has taken advantage of the remedies available under Illinois law and the informal procedures of the Department of Corrections; Weilburg alleges in the Complaint that he has informally complained to the Defendants for the alleged miscalculation of his custody

and release dates and that he has filed a petition for a writ of mandamus in state court seeking relief.

To the extent Weilburg is challenging the procedures underlying the alleged calculation error, the Complaint likewise fails to state a claim because IDOCs' method of reviewing challenges to the calculation of custody or release dates satisfies the dictates of procedural due process. See Franzen, 777 F.2d at 1229. The Defendants' request to dismiss Count I is allowed.

    B.    Count II

Weilburg alleges in Count II that the Defendants acted with deliberate indifference when they held him beyond his mandatory supervised release date of August 6, 2004, by miscalculating his custody and release dates. The allegations set forth in Count II appear to be a repetition of the due process claim in Count I. For the reasons discussed supra, the Court finds that Weilburg fails to allege a § 1983 claim for denial of due process in Count II. Count II is dismissed.

    C.    Count III

Weilburg alleges in Count III that the Defendants defamed him when they improperly characterized his theft offense on the IDOC website by

indicating that Weilburg was convicted of theft from a school or a place of worship. The Defendants move to dismiss Count III arguing that the Court lacks subject matter jurisdiction over Weilburg's state law claim for defamation. According to the Complaint, Weilburg has filed the instant lawsuit under § 1983. The Complaint fails to specify whether Count III is a state law claim for defamation.

To the extent Count III alleges a state law claim for a tort of defamation, this Court lacks jurisdiction. The Seventh Circuit has stated that "Eleventh Amendment sovereign immunity does not shield [state officers] . . . from federal court jurisdiction over state law tort claims." Magdziak v. Byrd, 96 F.3d 1045, 1048 (7th Cir. 1996) (citing Benning v. Bd. of Regents of Regency Universities, 928 F.2d 775, 778-79 (7th Cir. 1991)). However, tort claims against states officers for conduct that arises as a result of their state employment are subject to dismissal in state and federal court on the basis of sovereign immunity; the Illinois Court of Claims has exclusive jurisdiction over such actions. Turner v. Miller, 301 F.3d 599, 602 (7th Cir. 2002); Currie v. Lao, 148 Ill.2d 151 (1992).

Here, Weilburg alleges in the Complaint that the Defendants' erroneous calculation of his custody and release dates resulted in his

17

prolonged incarceration. This allegation is sufficient to show that the alleged conduct arose as a result of the Defendants' state employment. Therefore, to the extent Count III alleges a state law claim for defamation, the Court lacks jurisdiction.

To the extent Count III alleges a claim for defamation under § 1983, Weilburg similarly fails to state a claim. In order to state a claim for defamation under § 1983, Weilburg must not only allege that he was injured by the defamation, but also that he was deprived of his property or liberty interests. Jenkins v. Lane, 1989 WL 84474, at *4 (N.D. Ill. July 21, 1989). "The combination arises most frequently when an employee is discharged by a government employer; should the government agency at the same time publicly defame the employee, he may be deprived of a liberty interest: the interest in the possibility of future employment in his profession." Bone v. City of Lafayette, 763 F.2d 295, 298 (7th Cir. 1985).

In viewing the Complaint in the light most favorable to Weilburg at this stage, the Court finds that Count III fails to state a § 1983 claim. The Complaint alleges that the Defendants improperly characterized Weilburg's theft conviction on the IDOC website to discredit him among his "fellow believers." Complaint, V ¶ 23. The Complaint, however, fails to allege that

Weilburg was deprived of any property or liberty interests as a result of the Defendants' conduct. Injury to reputation alone is insufficient. Bone, 763 F.2d at 299. Count III therefore fails to state a claim under § 1983. The Defendants' request to dismiss Count III is allowed.

THEREFORE, for the reasons set forth above, the Motion to Dismiss (d/e 9) is ALLOWED. The matter is dismissed with prejudice. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   May 18, 2007.

       FOR THE COURT:

                                       s/ Jeanne E. Scott  
                                       JEANNE E. SCOTT  
                                       UNITED STATES DISTRICT JUDGE